**In re Russell WEBBER, Debtor.**

No. 02–10656–CJK.

United States Bankruptcy Court,
D. Massachusetts.

May 20, 2002.

Kathleen P. Dwyer, Danvers, MA, Chapter 7 Trustee.

John R. Cox, for debtor.

Kevin W. Lawless, for Donna Webber.

### MEMORANDUM OF DECISION ON TRUSTEE'S OBJECTION TO CLAIM OF HOMESTEAD EXEMPTION

CAROL J. KENNER, Bankruptcy Judge.

The issue presented by the Trustee objection to the Debtor's claim of a homestead exemption under the Massachusetts homestead statute, G.L. c. 188, § 1, is this: whether the estate of homestead ceases to exist when the owner who validly acquired it ceases both occupying the property and intending to occupy it as his or her princi-

pal residence but the owner's spouse and children continue to occupy the property as their principal residence. For the reasons set forth below, this Court concludes that the estate of homestead remains valid in those circumstances and, therefore, that the Trustee's objection to the Debtor's claim of exemption must be overruled.

Debtor Russell Webber has claimed his interest in certain real property as exempt under the Massachusetts homestead statute, G.L. c. 188. The Chapter 7 Trustee, Kathleen Dwyer, objects to the exemption on the basis that, as of the date of his bankruptcy petition, the Debtor did not occupy the property as his principal residence and, in view of the prepetition Judgment of Divorce Nisi that awarded the home to Donna Webber, from whom he is being divorced, could not realistically have intend to do so. Under G.L. c. 188, § 1, the Trustee contends that an estate of homestead remains valid and enforceable only as long as the holder of the estate either occupies or intends to occupy the homestead property as his or her principal residence.

The Debtor responds that, as of the date of his bankruptcy petition, which he contends is the operative date for determining his eligibility to claim the homestead exemption in bankruptcy, the Judgment of Divorce Nisi had not become absolute. Moreover, as of the petition date, he was (and still is) appealing the judgment; and, though he did not reside at the property, he still intended to obtain custody of the children and return to the marital home. Therefore, as one who, as of the operative date, intended to occupy the property as his principal residence and whose plea for such an arrangement had not finally been denied, he can claim the property as an exempt homestead.

## 1. *Facts*

The parties agree on the facts. Russell and Donna Webber were married in 1989 and acquired the real property at issue as tenants by the entirety in 1996. Russell filed a declaration of homestead with respect to the property on September 8, 1999, at which time he, with Donna and their three children (ages 5, 9, and 10 as of January 2002), occupied the property as their primary residence. Twenty days later, on September 28, 1999, Donna Webber obtained a restraining order that compelled Russell to vacate the property. Shortly thereafter, on October 12, 1999, Russell and Donna commenced divorce proceedings against each other. Early in the proceedings, the Probate Court entered a provisional order that gave to Donna both custody of the children and possession of the marital home during the pendency of the divorce proceedings.

In the divorce proceedings, Russell sought custody of the children and possession of the marital home. On January 17, 2002, after a five-day trial, the Probate Court entered a Judgment of Divorce Nisi. The judgment gave the parties joint legal custody of the children but gave Donna sole physical custody of the children and possession of the marital home. It also ordered Russell to convey his interest in the marital home to Donna "forthwith"; and it ordered Donna to sell or refinance the property by July 15, 2005 and, from the proceeds, to pay Russell $61,559—representing one-half of the net equity in the property as of the time of the trial—plus interest. Russell filed an appeal from the nisi judgment and, on January 30, 2002, commenced this bankruptcy case by filing a petition for relief under Chapter 7 of the Bankruptcy Code. Russell's appeal of the nisi judgment remains pending. Although the restraining order against him was dissolved on December 12, 1999, Russell has

not resided at the marital home since his eviction by restraining order on September 28, 1999. Donna and the three children continue to occupy the property as their principal residence.[1]

Russell maintains that, from the commencement of the divorce proceedings, he has hoped and intended to obtain an order granting him custody of the children and possession of the marital home; and even after entry of the nisi judgment, he states, he persists in that hope and intent. The Trustee denies that the Debtor had the necessary intent. I do not understand the Trustee to be denying that, as of the petition date, the Debtor intended to occupy the property as his principal residence; rather, she is arguing that, after entry of the nisi judgment, it was so unlikely that he would be permitted to occupy the property again as his principal residence that his intent was meaningless for purposes of the homestead statute.

### 2. *Discussion*

■ The Trustee bears the burden of proving that the exemption is not properly claimed. F.R.BANKR.P. 4003(c) (the objecting party has the burden of proving that an exemption is not properly claimed). The Debtor's right to or eligibility for a particular exemption is fixed and determined as of the date of his bankruptcy petition. 11 U.S.C. § 522(b)(2)(A) (debtor electing non-Code exemptions may exempt any property that is exempt under state law "that is applicable on the date of the filing of the petition"). Therefore, the issue to be determined here is whether, as of the date of his bankruptcy filing, the Debtor's right to claim the benefit of the Massachusetts homestead exemption under G.L. c. 188 had lapsed by virtue of his non-occupancy and dim prospect for resuming occupancy. The Trustee does not deny that the Debtor occupied the property as his principal residence when he acquired the estate of homestead; she contends only that it has lapsed.

■ As of the date of the Debtor's bankruptcy filing, the judgment of divorce nisi had entered but had not become absolute. In Massachusetts law, "judgments of divorce shall in the first instance be judgments nisi, and shall become absolute after the expiration of ninety days from the entry thereof, unless the court within said period, for sufficient cause, upon application of any party to the action, otherwise orders." G.L. c. 208, § 21. Therefore, as the Debtor maintains and the Trustee does not dispute, the divorce itself was not yet final, and the Debtor and Susan Webber remained married on the date of the bankruptcy filing.[2] *Sheffer v. Sheffer,* 316

---

1. Donna herself filed a separate homestead declaration as to the property on September 17, 2001. The Trustee does not contend that Donna's declaration invalidates Russell's, so the validity and effect of Donna's declaration are not now in issue. The Trustee believes that, should her objection to Russell's claim of exemption be sustained, she can prevail against Donna's homestead estate, arguing that Donna's is invalid because it was recorded while Russell's remained of record.

2. Perhaps for this reason, the Debtor and the Trustee appear to share the assumption that, although the judgment nisi ordered the Debtor to convey his interest in the marital home to Donna "forthwith," the Debtor still owned, as of the date of the bankruptcy filing, an interest in the marital home, and therefore that interest became an asset of his bankruptcy estate. The validity of this assumption is not here in issue. For purposes of the Trustee's objection to claim of exemption, I accept the assumption without deciding its validity. And I understand the Debtor to be claiming as exempt his interest in the real property, not just his right under the judgment nisi to a distribution in the amount of the value. The latter is a liquidation of the former but not an interest in real property.

Mass. 575, 56 N.E.2d 13 (1944); *Ross v. Ross*, 385 Mass. 30, 430 N.E.2d 815 (1982).

I turn next to the premise of the Trustee's objection: that the estate of homestead can be claimed only with respect to property that the claimant either occupies or intends to occupy as his or her principal residence. In essence, the Trustee contends that an estate of homestead ceases to exist when the owner who validly acquired it ceases both occupying the property and intending to occupy it as his or her principal residence, even where the owner's spouse and children continue to occupy the property as their principal residence.

■ The homestead statute does not support this interpretation for several reasons. First, a homestead "exemption" in Massachusetts law takes the form of an estate in land[3] and, as estates in land generally do, requires *a writing* both to acquire and to terminate. See G.L. c. 188, §§ 2 and 7.[4] (The Trustee does not suggest that this estate of homestead has been terminated by a writing.) The statute specifies three methods for terminating an estate of homestead, all three requiring a writing. Perhaps the statute does not intend for these to be the exclusive means by which an estate may be terminated. But, even if other methods are available, it would seem anomalous for the same statute to deem an estate terminated upon the lapse of something as inherently *non-evident* as the cessation of the owner's specific intent to occupy the premises. A writ-

3. The statute describes the right it confers as "an estate of homestead ... in the land and buildings." G.L. c. 188, § 1. The Supreme Judicial Court, in construing an early version of the law, described the estate in a manner still generally apt:

> This homestead right of a householder in land owned by him is an estate for his life, and for the additional term of the continuous subsequent occupation of his widow or any of his minor children. It is secured to him by law for the common benefit of his wife and children as well as of himself, and is inalienable without his and her joint consent, and is thus held by a distinct title from that by which he holds any surplus or reversion of the same land, which may be alienated by him or taken on execution by his creditors.

*Silloway v. Brown*, 94 Mass. 30, 33 (1866).

4. Acquisition of an estate of homestead is governed by G.L. c. 188, § 2, which states:

> To acquire an estate of homestead in real property, the fact that it is designed to be held as such shall be set forth in the deed of conveyance by which the property is acquired; or, after the title has been acquired, such design may be declared by a writing duly signed, sealed and acknowledged and recorded in the registry of deeds for the county or district in which the property is situated. To acquire a claim of homestead in a manufactured home, the fact that it is designed to be held as such shall be set forth in a writing duly signed, sealed and acknowledged and filed at the city or town clerk's office in the city or town in which the manufactured home is located. The acquisition of a new estate or claim of homestead shall defeat and discharge any such previous estate.

Termination of the estate is the subject of G.L. c. 188, § 7, which states:

> An estate of homestead created under section two may be terminated during the lifetime of the owner by either of the following methods: (1) a deed conveying the property in which an estate of homestead exists, signed by the owner and the owner's spouse, if any, which does not specifically reserve said estate of homestead; or by (2) a release of the estate of homestead, duly signed, sealed and acknowledged by the owner and the owner's spouse, if any, and recorded in the registry of deeds for the county or district in which the property is located.

In addition to the two methods of termination specified in § 7, an estate of homestead can also be terminated by "the acquisition of a new estate or claim of homestead." G.L. c. 188, § 2 (last sentence). But this is not an exception to the requirement of a writing because the new estate itself can be acquired only by a writing.

ing exists independently and outside of the homestead owner; it can be recorded in the registry of deeds (as § 7 requires for releases) or given to a purchaser of the property (as when the termination is effected by deed); it provides a measure of public certitude about the status of the estate of homestead.[5] Specific intent, on the other hand, is hidden in the mind of the homestead owner, may not be clear even to him or her, and can change back and forth; it often leaves no public record of itself. It is an inherently unworkable basis for keeping track of estates in land. Therefore, by specifying three methods of termination, all three requiring a writing, the Massachusetts legislature likely meant to preclude termination by simple abandonment.

Second, the requirement (of occupancy or intent to occupy as a principal residence) appears in the statute only as a limitation on the *acquisition* of an estate of homestead.[6] Nothing in G.L. c. 188 states that an estate of homestead, once properly acquired, terminates when the owner who obtained the estate of homestead ceases to satisfy the occupancy requirement.

■ Third, an estate of homestead exists for the benefit not only of the owner who obtained the estate but also of his or her family.[7] Therefore, even if the continued validity of an estate of homestead were contingent on the continuing satisfaction of the occupancy requirement, the requirement would be more faithfully construed as applying to the family, not just to the owner that holds the homestead. See, for example, section 4, which contemplates the continuation of the estate after the death of the person holding the homestead for the benefit of the his or her spouse and minor children. Clearly this would not be possible if the holder's occu-

---

5. The Supreme Judicial Court, without deciding whether an estate of homestead can be terminated by abandonment without intent to return, has repeatedly emphasized the need for clear evidence of termination:

> [t]he homestead estate may be conveyed away in the manner prescribed by the statute, or terminated by acquiring another homestead elsewhere; but *if* any acts of abandonment, short of acquiring a new homestead, will defeat a homestead estate, they must be such as afford *unequivocal evidence* of an intent to abandon it. *Drury v. Bachelder*, 77 Mass. 214, 11 Gray, 214. *Connor v. McMurray*, 2 Allen 202, 84 Mass. 202, 1861 WL 4639. *Dulanty v. Pynchon*, 88 Mass. 510, 6 Allen, 510. *Lazell v. Lazell*, 8 Allen, 575, 90 Mass. 575, 1864 WL 3392. *Silloway v. Brown*, 94 Mass. 30, 33 (1866) and cases cited therein (emphasis added).

6. See G.L. c. 188, § 1: "An estate of homestead ... may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise *and who occupy or intend to occupy said home as a principal residence*." For purposes of this argument, I will assume that the italicized phrase, the language requiring occupancy or intent to occupy as a principal residence, is intended to apply not only to "one or all who rightfully possess the premise by lease or otherwise" but also to "an owner or owners or a home."

7. See G.L. c. 188, § 1 ("provided, that only one owner may acquire an estate of homestead in any such home for the benefit of his family; and provided further, that an estate of homestead may be acquired on only one principal residence for the benefit of a family"); § 3 (probate court may award use and enjoyment of homestead to spouse and children to exclusion of homestead owner); § 4 (estate of homestead continues after death of homestead holder for benefit of surviving spouse and minor children); § 7 (termination of estate of homestead requires deed or release by owner *and* spouse); and § 8 (surviving spouse and children, by their guardian, may sell the estate of homestead); *Dwyer v. Cempellin*, 424 Mass. 26, 29–30, 673 N.E.2d 863 (1996) ("The obvious legislative purpose of G.L. c. 188, § 1, is to protect the home from the claims of creditors for the benefit of the homestead declarant and his or her family.").

pancy were a continuing requirement. In this case, as of the petition date, the Debtor's wife (she remained his wife as of the petition date) and children continued to occupy the premises as their principal residence. Even if the Debtor himself failed to satisfy the alleged occupancy requirement, his family did not; and if there is any such requirement, *their* occupancy is enough to satisfy it.

■ Fourth, where the holder of the homestead estate is married (as was this holder at all relevant times), the holder cannot terminate the estate unilaterally. Rather, section 7 of the homestead statute specifies only two methods by which the estate may be terminated during the lifetime of the owner, both of which require that the holder's spouse join in the release or deed by which the termination is accomplished.[8] In light of this requirement, the requirement of continuing occupancy, if it exists at all, should be deemed satisfied as long as either the holder *or the spouse* continued to occupy, or intended to occupy, the property as his or her principal residence. Otherwise, the holder would be able to accomplish by unilateral abandonment (of the property as his or her principal residence) what the statute expressly requires a joint act to accomplish by writing.

Fifth, the homestead statute states, in § 3, that, where the spouse of the owner of an estate of homestead is living apart from the owner for justifiable cause, or custody of the children of the owner is granted to a person other than the owner, the probate court may by order grant to the spouse or children or both the right to use, occupy, and enjoy the homestead until further order of the court; and that the recording of such an order would operate to prevent the owner from disposing of the estate until the order was revoked.[9] G.L. c. 188, § 3. The order that the probate court is authorized to enter under this section does not create or preserve an estate of homestead; it merely specifies which persons, among all the family members, shall enjoy that estate after a divorce or separation. This provision would make no sense unless the homestead estate continued in effect after the owner were indefinitely or permanently prohibited from reoccupying the premises as his or her principal residence: there would be no estate for the probate court to allocate or (absent such an order) for the owner to dispose of.

For these reasons, I conclude that either (1) the continuing validity of a Massachusetts estate of homestead is not contingent on the holder's continued occupancy or intent to occupy or (2) if the validity of such an estate requires continuing occupancy or intent to occupy as a principal residence, the requirement is satisfied if the holder's spouse and minor children continue to occupy the premises as their principal residence. I need not decide which of these two constructions the statute requires; it is enough to hold that the premise of the Trustee's argument is invalid. Even if the Debtor did not have on his petition date the requisite intent to return to the property as his principal residence, his estate of homestead remained valid and effectual. Accordingly, by separate order, the Court will overrule the Trustee's ob-

8. Section 2 specifies another method: an estate of homestead is discharged and defeated by the acquisition of a new estate of homestead. Though this may be accomplished unilaterally, it merely replaces one estate with another and does not deprive the family of a homestead.

9. After a divorce, the holder would no longer have a spouse and, but for this provision, would be able to terminate the estate unilaterally.

jection to claim of exemption and allow the Debtor's claim of exemption as to his share of the equity in the property.